2 F.3d 72
 UNITED STATES of America, Plaintiff-Appellee,
v.
Walter IRVIN; Michael L. Schumacher, Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellant,
v.
Santiago GONZALES; Walter Irvin; Michael L. Schumacher,
Defendants-Appellees.
UNITED STATES of America, Plaintiff-Appellee,
v.
Santiago GONZALES, Defendant-Appellant.
 Nos. 91-5454, 91-5373 and 91-5468.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 7, 1993.
Decided Aug. 23, 1993.
 
 Walter Franklin Green, IV, Green & O'Donnell, Harrisonburg, VA, argued for appellants Irvin and Schumacher and Terry Armentraut, Roger A. Ritchie & Associate, Harrisonburg, VA, argued for appellant Gonzales.
 Ray B. Fitzgerald, Jr., Asst. U.S. Atty., Roanoke, VA, argued (E. Montgomery Tucker, U.S. Atty., on brief), for appellee.
 Before RUSSELL, WILKINSON, and WILKINS, Circuit Judges.
 OPINION
 WILKINS, Circuit Judge:
 
 
 1
 Walter D. Irvin and Michael L. Schumacher challenge their convictions and sentences for conspiracy to distribute and conspiracy to possess with the intent to distribute cocaine and marijuana, see 21 U.S.C.A. Sec. 841(a)(1) (West 1981); 21 U.S.C.A. Secs. 846, 841(b)(1)(A)(ii)(II), 841(b)(1)(B)(vii) (West 1981 & Supp.1993), and conspiracy to import controlled substances into the United States, see 21 U.S.C.A. Secs. 846, 952 (West 1981 & Supp.1993). Santiago Gonzales contests his conviction and sentence for conspiracy to distribute and conspiracy to possess with the intent to distribute cocaine. See 21 U.S.C.A. Secs. 846, 841(a)(1), 841(b)(1)(A)(ii)(II). The primary issue on appeal presented by Irvin and Schumacher is whether a district court must determine the quantity of narcotics reasonably foreseeable to each individual coconspirator prior to a determination of the applicability of the mandatory minimum sentencing provisions of Sec. 841(b). We hold that it must, and because the district court did not make this determination of reasonable foreseeability before application of the statute, we vacate the sentences imposed on Irvin and Schumacher pursuant to Sec. 841(b).
 
 
 2
 As an alternative to the mandatory minimum sentences, the district court imposed sentences on Irvin and Schumacher pursuant to the sentencing guidelines. We find no error with these sentences, and therefore affirm the sentences imposed on this basis. Further, we find no error with the guideline sentence imposed on Gonzales; accordingly, we also affirm his sentence. Because the alleged trial errors raised by all three Appellants are without merit, we affirm their convictions.
 
 I.
 
 3
 A grand jury returned two indictments charging Irvin, Schumacher, Gonzales, and others with involvement in a large drug importation and distribution conspiracy. Facts elicited at trial, viewed in the light most favorable to the Government, see Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), revealed that Gonzales operated as a source of cocaine for other individuals who participated in different ways and at various levels of the conspiracy. Irvin and Schumacher worked at the retail level, with Irvin selling quantities of marijuana and Schumacher dispensing quantities of marijuana and cocaine.
 
 
 4
 Following the return of guilty verdicts,[1] a presentence report (PSR) was prepared for each coconspirator. Each PSR applied the precepts of relevant conduct[2] in determining the quantity of narcotics properly attributable to each coconspirator. See United States Sentencing Commission, Guidelines Manual, Sec. 1B1.3 (Nov.1991). Gonzales' PSR recommended attribution of 5 to 15 kilograms of cocaine to him, see U.S.S.G. Secs. 2D1.4, 2D1.1(c)(6), and a four-level enhancement for his role in the offense, see U.S.S.G. Sec. 3B1.1(a). The resulting offense level of 36, combined with a Criminal History Category of I, yielded a guideline range of 188-235 months imprisonment. The PSR noted that because of Gonzales' participation in a conspiracy involved with five or more kilograms of cocaine, he was also subject to the ten-year mandatory minimum sentence under Sec. 841(b).
 
 
 5
 Irvin's PSR recommended attribution of 5.58 kilograms of marijuana to him, resulting in a base offense level of 14. See U.S.S.G. Secs. 2D1.4, 2D1.1(c)(15). Combined with a Criminal History Category of II, Irvin's guideline range was 18-24 months imprisonment. Schumacher's PSR recommended attribution of 700 grams of cocaine and 79 kilograms of marijuana to him, resulting in a base offense level of 26. See U.S.S.G. Secs. 2D1.4, 2D1.1(c)(9). Combined with a Criminal History Category of III, the resulting guideline range was 78-97 months imprisonment.
 
 
 6
 At sentencing, the district court observed that Gonzales' guideline range exceeded the statutory mandatory minimum sentence of ten years imprisonment mandated by Sec. 841(b). Consequently, it imposed a guideline sentence of 200 months imprisonment. With regard to Irvin and Schumacher, the Government argued that, due to their convictions on the conspiracy count, both also were subject to the ten-year mandatory minimum sentencing provision of Sec. 841(b). The district court found that the conspiracy as a whole was responsible for distribution of at least five kilograms of cocaine. In the event that the statute required imposition of the mandatory minimum sentence regardless of whether the quantity of narcotics attributed to the conspiracy as a whole was reasonably foreseeable to an individual coconspirator, the district court imposed a mandatory minimum sentence of ten years imprisonment on both Irvin and Schumacher. In the alternative, the court, after adopting the recommendations in the PSRs, imposed sentences under the sentencing guidelines: Irvin received a sentence of 24 months imprisonment and Schumacher received a sentence of 88 months imprisonment.
 
 II.
 A.
 
 7
 Section 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the ... object of the attempt or conspiracy." 21 U.S.C.A. Sec. 846.[3] Here, the "object" of the conspiracy was possession with the intent to distribute and distribution of narcotics. See 21 U.S.C.A. Sec. 841(a)(1). Section 841(b) sets forth the penalties for these offenses, providing mandatory minimum sentences based on the quantity of narcotics "involv[ed]" in the object offense. 21 U.S.C.A. Sec. 841(b).[4] Thus, the penalties established under Sec. 841(b) apply with equal force to attempts and conspiracies to violate the object offenses set forth in Sec. 841(a). See, e.g., United States v. Gilliam, 987 F.2d 1009, 1011 n. 2 (4th Cir.1993) (noting that Congress amended Sec. 846 "to subject those who violate [this] section to the same penalties as those prescribed for the underlying offense"); United States v. Montoya, 891 F.2d 1273, 1293 n. 25 (7th Cir.1989) (same). Because the quantity of narcotics is not an element of the offenses proscribed by Sec. 841(a), United States v. Uwaeme, 975 F.2d 1016, 1018 (4th Cir.1992), in order to apply Sec. 841(b), a district court must determine the appropriate quantity of narcotics at sentencing by a preponderance of the evidence, United States v. Powell, 886 F.2d 81, 85 (4th Cir.1989), cert. denied, 493 U.S. 1084, 110 S.Ct. 1144, 107 L.Ed.2d 1049 (1990).
 
 B.
 
 8
 As we have recognized, Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), controls questions of an individual defendant's criminal liability for acts done by others in furtherance of conspiratorial activity. E.g., United States v. Cummings, 937 F.2d 941, 944 (4th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 395, 116 L.Ed.2d 345 (1991). Under Pinkerton, in order to hold a coconspirator criminally liable for acts of other members of the conspiracy, the act must be "done in furtherance of the conspiracy" and "be reasonably foreseen as a necessary or natural consequence of the" conspiracy. Pinkerton, 328 U.S. at 647-48, 66 S.Ct. at 1184; see also Cummings, 937 F.2d at 944 (noting that Pinkerton "makes conspirators liable for all reasonably foreseeable acts of their coconspirators done in furtherance of the conspiracy"). In order to be reasonably foreseeable to another member of the criminal organization, and thus to hold a coconspirator criminally liable, acts of a coconspirator "must fall within the scope of the agreement between the" specific individual and the coconspirator. United States v. Jones, 965 F.2d 1507, 1517 (8th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 346, 121 L.Ed.2d 261 (1992). The issue Irvin and Schumacher ask us to resolve is whether, in arriving at the proper quantity of narcotics for purposes of sentencing under Sec. 841(b) following a finding of guilt for a violation of Sec. 846, a district court must apply the principles of Pinkerton to determine the quantity of narcotics reasonably foreseeable to an individual coconspirator, rather than automatically rely on the quantity attributed to the conspiracy as a whole. They argue that in some cases the quantity attributed to the conspiracy as a whole properly may be attributed to an individual coconspirator, but that in other cases, the quantity properly attributed to an individual coconspirator may be less than that attributed to the entire conspiracy.
 
 
 9
 To support its conclusion that a standard of reasonable foreseeability has no role in interpretation or application of Sec. 841(b) following a finding of guilt under Sec. 846, the Government contends that the plain language of Sec. 846, which provides that the district court "shall" impose the "same penalties," requires that a district court apply Sec. 841(b) without any intervening assessment of whether the acts of other coconspirators were reasonably foreseeable. The Government also maintains that introduction of the principles of Pinkerton into Sec. 841(b) would impermissibly individualize sentences for conspiracy offenses by focusing on the acts of the individual coconspirator and the acts of others reasonably foreseeable to him, rather than on the existence of the criminal organization as a whole. For the reasons that follow, we disagree that these assertions support the position that the Government urges.
 
 
 10
 Construction of a criminal penalty provision requires exercise of plenary review, United States v. Hall, 972 F.2d 67, 69 (4th Cir.1992), and "must begin with the language of the statute," United States v. Sheek, 990 F.2d 150, 152 (4th Cir.1993). Absent ambiguity, a "court should not look beyond that language." Id. at 152-53; cf. United States v. Turkette, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (noting that court must accord words of statute their common and ordinary meaning unless ambiguous). If ambiguity is found in the statute, resort to the legislative history is proper. Cf. Sheek, 990 F.2d at 152 (noting that "court should not look beyond" language of statute "unless there is ambiguity").
 
 
 11
 As noted previously, Sec. 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those" set forth for the object offenses. 21 U.S.C.A. Sec. 846. The Government argues that the common and ordinary meaning of this phrase, when read in conjunction with the sentencing provisions of Sec. 841(b), requires a district court to apply the mandatory minimum sentence set forth in Sec. 841(b) corresponding to the aggregate quantity of narcotics involved in the conspiracy. Thus, according to the Government, in a narcotics conspiracy comprised of different individuals and multiple criminal acts, a district court must determine the applicable sentence by ascertaining the quantity of narcotics involved in each object offense of the conspiracy, aggregate these amounts, and then assign to each coconspirator the mandatory minimum sentence of Sec. 841(b) corresponding to the aggregated quantity of narcotics.[5]
 
 
 12
 While we agree with the Government that its construction of Secs. 846 and 841(b) is plausible, we do not find the statutory language of these sections so obviously supportive of this interpretation alone.[6] Under another logical reading of the statutory language, the sentencing provisions applicable to conspiracies involving multiple narcotics should be individualized to reflect a particular coconspirator's relative culpability in the conspiracy. In other words, the statutes require a district court to determine the accountability of each coconspirator for each object offense and the quantity of narcotics involved in each object offense using the principles of Pinkerton. Next, a district court would aggregate the quantities attributed to each coconspirator, and then apply Sec. 841(b). Thus, because the relevant statutory language is susceptible to interpretations other than the one suggested by the Government and is therefore ambiguous, we turn to the legislative history for assistance in ascertaining the intent of Congress.
 
 
 13
 An examination of the legislative history of Sec. 846 leads us to conclude that the most reasonable interpretation of the relevant statutory provisions requires a sentencing court to assess the quantity of narcotics attributable to each coconspirator by relying on the principles set forth in Pinkerton. Cf. United States v. Martinez, 987 F.2d 920, 925 (2d Cir.1993) (holding that a standard of reasonable foreseeability must be applied to determine applicability of Sec. 841(b) for each coconspirator and reasoning that "there is nothing to indicate that Congress intended to abandon the theory of conspiratorial liability that has descended from Pinkerton");[7] United States v. Bush, 813 F.Supp. 1175, 1180 (E.D.Va.1993) (holding that if district court finds that defendant "could have reasonably foreseen involvement with only a smaller quantity of a controlled substance than that alleged in the [conspiracy] charge, the Court need not impose a statutory minimum sentence"). The legislative history indicates that Congress intended not to increase exposure for criminal punishment beyond that already available, but "to synchronize the penalties for conspiracies and their underlying offenses ... [by] ensur[ing] that a defendant who is charged with only conspiracy not be in a better position for sentencing than one who is charged solely with possession of the same amount of narcotics." Martinez, 987 F.2d at 925 (interpreting statement by Senator Biden that the amendment "make[s] clear that any penalty that may be imposed for a substantive drug offense may be imposed for an attempt or conspiracy to commit that offense") (citation omitted). Indeed, contrary to the assertion by the Government that the plain language mandates imposition of the same mandatory minimum sentence for each member of the conspiracy, "there is nothing in the legislative history to indicate that Congress intended the revision to expand the accountability of defendants beyond their substantive offenses," or that Congress sought to reject application of a standard of reasonable foreseeability. Id. We conclude that, had Congress so resolved, such an "intent would surely have been clearly expressed." Id. at 926. Moreover, requiring application of a standard of reasonable foreseeability under Sec. 841(b) is not inconsistent with Sec. 846 because, as noted previously, Sec. 846 does no more than mandate application of the same penalty as that imposed for the object offense. See id. at 926.
 
 C.
 
 14
 Although not controlling of our decision, we find support for our interpretation of Secs. 841(b) and 846 in the sentencing guidelines. Under the guidelines, a coconspirator is held accountable for the quantity of drugs reasonably foreseeable to him within the scope of his unlawful agreement. See Gilliam, 987 F.2d at 1012-13. This incorporates the concept of reasonable foreseeability as described in Pinkerton. See, e.g., United States v. Tisdale, 952 F.2d 934, 938 (6th Cir.1992) (noting that the "concept [of Pinkerton ] unquestionably applies to" the guidelines); United States v. LaFraugh, 893 F.2d 314, 317 (11th Cir.) ("hold[ing] that the standards embodied in section 1B1.3 roughly approximate those detailed ... in Pinkerton"), cert. denied, 496 U.S. 911, 110 S.Ct. 2601, 110 L.Ed.2d 281 (1990). This approach allows a sentencing court to differentiate, for sentencing purposes, among degrees of culpability of coconspirators even though all are convicted of the same statutory offense. See Gilliam, 987 F.2d at 1013. Thus, we join several other circuits that have concluded that the Pinkerton principles as detailed in the relevant conduct guideline, U.S.S.G. Sec. 1B1.3, determine the application of Sec. 841(b) for a defendant who has been convicted of Sec. 846.[8] See Martinez, 987 F.2d at 925-26; United States v. Young, 997 F.2d 1204, 1209-11 (7th Cir.1993); cf. United States v. Becerra, 992 F.2d 960, 967 & n. 2 (9th Cir.1993) (rejecting the contention that "sentencing under the statutory mandatory minimums should differ" from the guidelines and opining that on remand, standard of reasonable foreseeability must be applied under Secs. 841(b) and 846); Jones, 965 F.2d at 1517 (holding that the standards for determining quantity under the sentencing guidelines apply to determining quantity under Secs. 841(b) and 846).[9]
 
 
 15
 In interpreting pronouncements of Congress, the courts must endeavor to be true to the legislative mandate. Recognizing this obligation, we take notice of the fact that the guidelines were created pursuant to the Sentencing Reform Act of 1984, 28 U.S.C.A. Secs. 991-998 (West Supp.1993), and that the individual guidelines, including the reasonable foreseeability test as set forth in the relevant conduct section, have been accepted by Congress.[10] Thus, two distinct congressionally approved sentencing schemes, the mandatory minimum approach and the sentencing guidelines, are presently in place, two schemes that should be reconciled to the extent legitimate and practical.
 
 
 16
 We conclude that in order to apply Sec. 841(b) properly, a district court must first apply the principles of Pinkerton as set forth in the relevant conduct section of the sentencing guidelines, U.S.S.G. Sec. 1B1.3, to determine the quantity of narcotics reasonably foreseeable to each coconspirator within the scope of his agreement. If that amount satisfies the quantity indicated in Sec. 841(b), the district court must impose the mandatory minimum sentence absent a higher sentencing range resulting from application of the sentencing guidelines. If the quantity is less than that set forth in Sec. 841(b), the statutory mandatory minimum sentencing provision would not apply. Here, the district court erred in failing to determine the quantity of narcotics reasonably foreseeable to Irvin and Schumacher within the scope of their agreements prior to imposing the mandatory minimum sentences. Thus, we vacate their sentences imposed under Sec. 841(b). However, the district court correctly sentenced Irvin and Schumacher in the alternative under the sentencing guidelines. Accordingly, we affirm the sentences imposed on them on this basis and remand with directions that the district court amend the judgments to reflect imposition of sentences under the sentencing guidelines.
 
 III.
 
 17
 Gonzales, Irvin, and Schumacher present numerous challenges to the guilt phase of their trial. All three maintain that insufficient evidence exists to support their convictions, while Irvin and Schumacher claim evidentiary errors, violations of the Speedy Trial Act, 18 U.S.C.A. Sec. 3161(h) (West 1985), and errors relating to severance and the indictments. After careful review of the record, we conclude that these contentions are without merit and do not warrant discussion.
 
 
 18
 Gonzales raises two issues pertaining to application of the sentencing guidelines. He maintains that the district court miscalculated the quantity of narcotics attributable to him and improperly added four levels to his base offense level for his role in the offense. Again, our review of the record indicates that these contentions are without merit.
 
 IV.
 
 19
 Accordingly, we affirm the convictions of all three Appellants. We also affirm the sentences imposed on them pursuant to the sentencing guidelines. Because we vacate the sentences imposed on Irvin and Schumacher pursuant to Sec. 841(b), we remand with directions to the district court to amend the judgments accordingly.
 
 
 20
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS TO AMEND THE JUDGMENTS.
 
 
 
 [1]
 The district court denied the motion of the Government to detain Gonzales, Irvin, and Schumacher pending sentencing pursuant to 18 U.S.C.A. Sec. 3143(a)(2) (West Supp.1993). Upon motion of the Government, a panel of this court reversed and ordered the defendants into custody because the district court, reading Sec. 3143(a)(2) as including disjunctive subsections, applied only one subsection. As use of the word "and" in Sec. 3143(a)(2) indicates, both subsections (A) and (B) must be satisfied in order to grant release pending sentencing. Cf. United States v. Bloomer, 967 F.2d 761, 762 (2d Cir.1992) (noting that defendant "shall be detained unless two conditions are met")
 
 
 [2]
 The current version of the guideline addressing relevant conduct provides:
 (a) Chapters Two (Offense Conduct) and Three (Adjustments). Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
 (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
 (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,
 that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.
 United States Sentencing Commission, Guidelines Manual,
 Sec. 1B1.3(a)(1)(A)-(B) (Nov.1992). Application Note Two further provides in pertinent part:
 Because a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by the defendant ... is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant. In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement). The conduct of others that was both in furtherance of, and reasonably foreseeable in connection with, the criminal activity jointly undertaken by the defendant is relevant conduct under this provision. The conduct of others that was not in furtherance of the criminal activity jointly undertaken by the defendant, or was not reasonably foreseeable in connection with that criminal activity, is not relevant conduct under this provision.
 U.S.S.G. Sec. 1B1.3, comment. (n. 2).
 
 
 [3]
 Congress amended this section in 1988. See Anti-Drug Abuse Act of 1988, Pub.L. No. 100-690, 102 Stat. 4377 (1988). Prior to this change, Sec. 846 provided that the sentence "may not exceed the maximum punishment prescribed for the ... object of the attempt or conspiracy." 21 U.S.C.A. Sec. 846 (West 1981)
 
 
 [4]
 For example, Sec. 841(b) provides for the imposition of a ten-year sentence for a defendant convicted of conspiracy to possess with the intent to distribute five kilograms or more of cocaine. See 21 U.S.C.A. Sec. 841(b)(1)(A)(ii)(II)
 
 
 [5]
 When different types of controlled substances are involved, as is the case with Irvin and Schumacher, the approach advocated by the Government requires a district court to arrive at a total quantity for each substance and to apply the mandatory minimum sentence corresponding to the type and quantity of narcotic that results in the highest mandatory minimum sentence. Unlike the sentencing guidelines, see U.S.S.G. Sec. 2D1.1, comment. (nn. 6, 10), Sec. 841(b) provides no mechanism for aggregating quantities of different controlled substances to yield a total amount of narcotics
 
 
 [6]
 One also might posit, for example, that the language of the statutes compels a district court to ascertain the quantity of narcotics involved in each object offense of the conspiracy, determine from Sec. 841(b) the minimum and maximum sentences corresponding to each quantity for each object offense, and then assign to each coconspirator a possible maximum sentence equal to the sum of the maxima for all object offenses and the highest minimum sentence for any object offense. Under this approach, each coconspirator would be sentenced as if each one had individually committed each of the substantive narcotics offenses comprising the conspiracy. In the terms of Sec. 846, the coconspirators would be subject to the "same penalties as those prescribed for" the object offenses of the conspiracy
 One obvious problem with this construction is that it could result in different penalties for different conspiracies although each conspiracy involved the same quantity of narcotics. That is, this approach depends on the number of object offenses committed pursuant to the conspiracy and the quantity of narcotics involved in each object offense. Consequently, while we offer this as a possible alternative reading of the statutory language to illustrate that the language is not entirely free of facial ambiguity, we doubt that Congress intended the statutory provisions to be so interpreted.
 
 
 [7]
 United States v. Pinto, 905 F.2d 47 (4th Cir.1990), is not to the contrary because unlike the instant case, Pinto did not deal with conspiracy. In Pinto, we simply held that for purposes of Sec. 841(b), the term "cocaine base" includes crack cocaine, noting that because the Government does not have to prove knowledge of the specific nature of the drugs for which a defendant is convicted, Sec. 841(b) provides sufficient notice of the prohibited substances to survive a due process challenge. Id. at 50
 
 
 [8]
 In addition to setting forth terms of incarceration, Sec. 841(b) also provides minimum and maximum fines and terms of supervised release. The standard of reasonable foreseeability also determines the applicability of these other penalties
 
 
 [9]
 United States v. Hodges, 935 F.2d 766, 771-772 (6th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 251, 116 L.Ed.2d 206 (1991), is not to the contrary. There, the court held that "[o]nce the quantities specified in the statute are established, trial judges are obligated to impose at least the applicable mandatory minimum sentence." Id. at 772. The court noted, however, that it "need not determine in this case whether the penalty as to [Hodges] could have been limited had he been a part of the conspiracy for only a brief time." Id. at 772 n. 8. Thus, Hodges did not address the precise question before us
 
 
 [10]
 See 28 U.S.C.A. Sec. 994(p) (providing that guidelines and amendments thereto shall take effect 180 days after submission unless "modified or disapproved by Act of Congress")