UNITED STATES of America

v.

Fayaz ANJUM

Civil No. HNM–95–3288.
Criminal No. K–92–096.

United States District Court,
D. Maryland.

April 18, 1997.

Lynne A. Battaglia, United States Attorney, for District of Maryland.

Jan Paul Miller, Assistant United States Attorney, Baltimore, MD, for government.

William B. Purpura, Baltimore, MD, for Fayaz Anjum.

### MEMORANDUM

MALETZ, Senior Judge.[1]

Currently pending before the court is the motion of Fayaz Anjum to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (1994), *amended by* Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214.[2] Anjum contends: (1) that the court erred in determining his sentence; (2) that he was denied effective assistance of counsel; (3) that the court erred in instructing the jury; and (4) that the evidence was insufficient to support the jury's finding of guilt. For the reasons that follow the motion is denied.

### I.

On August 22, 1991, Khalid Khan told Afsar Khan, a government informant, that approximately 1.235 kilograms of heroin had been imported into the United States and that the first kilogram of this amount would sell for $100,000. Khalid Khan instructed Afsar Khan to contact Khalid Khan's courier and to pay him $15,000 on receiving the heroin. Afsar Khan was to pay the remaining $85,000 to Khawaja Arshad in New York, to whom he was to identify himself as "Mr. Durrani's man; care of Tariq Saraf Peshawar."

On August 26, 1991, Afsar Khan and Special Agent Dennis Bass, acting in an undercover capacity, met with two couriers in Baltimore. The couriers delivered more than a kilogram of heroin, and informed Special Agent Bass that they had personally imported it from Pakistan. Special Agent Bass then delivered the $15,000 to the couriers.

Following that meeting, Afsar Khan and Special Agent Bass contacted Khawaja Arshad to arrange for payment of the remaining $85,000. Khawaja Arshad, however, refused to come to Baltimore to pick up the money.

On September 4, 1991, Afsar Khan received a telephone message from Fayaz Anjum, who subsequently stated that he was in Los Angeles and would travel to Baltimore to pick up the $85,000 for Khalid Khan. Anjum requested that payment be made in "big bills." Afsar Khan later telephoned Anjum and stated that he would await Khalid Khan's instructions. Afsar Khan also stated that the money was "drug money." When Afsar Khan called Khalid Khan in Pakistan, Khalid Khan instructed him to pay the money to Anjum.

On September 5, 1991, Anjum traveled to Baltimore and met with Afsar Khan. Afsar Khan delivered the $85,000 to Anjum, who

---

1. Of the United States Court of International Trade, sitting by designation.

2. Because Anjum filed this motion before the Act's enactment, the court need not consider what effect the Act would have on this motion.

counted the money and complained that it was not in large bills. Anjum wrote out and signed a receipt for Afsar Khan. As part of a pre-arranged ruse, however,—a Baltimore City police officer drove up to the scene and asked for permission to search the car. Afsar Khan granted the permission, the money was discovered, and both men denied any knowledge of the money. Police confiscated the $85,000 after dogs detected the presence of drugs on the bills, but neither man was arrested. After the police left, Afsar Khan returned the receipt to Anjum.

In the days after this incident, Khalid Khan again contacted Afsar Khan and asserted that Afsar Khan still owed him $85,-000. Khalid Khan directed Afsar Khan to contact Anjum so they could arrange to recover the money from the police. When Afsar Khan called Anjum, Anjum stated that he had spoken with people in Pakistan and that they must go to the police to seek a return of the money. Afsar Khan, however, refused to do so.

In the following months, conversations between the numerous participants continued. During this time, Special Agent Bass received a sample of heroin from Pakistan in an envelope marked "Tariq Ahmad," bearing a return address of Peshawar, Pakistan. In November 1991, Anjum stated to Afsar Khan that his contact in Pakistan was a man named Tariq, Khalid Khan's neighbor.

A federal grand jury indicted Anjum on two counts of conspiracy. The first count charged Anjum with conspiracy to import heroin in violation of 21 U.S.C. § 963; the second with conspiracy to distribute and possess with intent to distribute heroin, a violation of 21 U.S.C. § 846. A jury convicted Anjum on both counts. The court sentenced Anjum to concurrent terms of 124 months imprisonment on each count, five years of supervised release on each count, also to run concurrently, and a special assessment of $100. Anjum appealed his conviction, but raised no objection to his sentence, and the Fourth Circuit affirmed. *United States v. Anjum*, No. 93–5537, 1994 WL 416422 (4th Cir. Aug.10, 1994) (unpublished). The Supreme Court denied certiorari. *Anjum v.*

*United States*, 513 U.S. 1051, 115 S.Ct. 653, 130 L.Ed.2d 557 (1994).

## II.

■ Anjum first challenges the legality of his sentence. He contends that the court erred in imposing a mandatory minimum sentence under 21 U.S.C. § 841(b) without a determination of the quantity of narcotics reasonably foreseeable to him as required by *United States v. Irvin*, 2 F.3d 72 (4th Cir. 1993), *cert. denied*, 510 U.S. 1125, 114 S.Ct. 1086, 127 L.Ed.2d 401 (1994), a case decided during the pendency of Anjum's direct appeal. Anjum alleges that, had a reasonable foreseeability determination been made at his sentencing as required by *Irvin*, less than 1 kilogram of heroin would have been attributable to him and a mandatory minimum sentence would not have been imposed.

■ Because Anjum failed to challenge the quantity of narcotics for which he was responsible at his sentencing or on direct appeal, the government argues that this claim is procedurally defaulted. A claim raised for the first time in a § 2255 motion generally is not reviewable unless the defendant demonstrates "both (1) 'cause' excusing his ... procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982).

The court need not consider the issue of "cause" because Anjum has failed to show any "actual prejudice." Even assuming *Irvin* applies retroactively, that case does not establish any error in Anjum's sentence because, first, the court did not impose a statutory mandatory minimum sentence on Anjum, and, second, the record supports the court's conclusion that Anjum was aware, or should have been aware, of 1.235 kilograms of heroin, the amount of drugs involved in the August 1991 transaction.

*Irvin* held that a district court must apply the principles set forth in the relevant conduct guideline to determine the quantity of drugs reasonably foreseeable to a defendant before applying the mandatory minimum sentence provisions of 21 U.S.C. § 841.

Here, the court did not impose the mandatory minimum sentence because a higher sentencing range resulted from application of the sentencing guidelines. Rather, the court imposed a guideline sentence of 124 months. By contrast, in *Irvin,* the court found that the conspiracy as a whole was responsible for the distribution of at least five kilograms of cocaine. In the event that the statute required imposition of the mandatory minimum sentence regardless of whether the quantity of drugs attributed to the conspiracy as a whole was reasonably foreseeable to an individual coconspirator, the court imposed a mandatory minimum sentence of 10 years imprisonment on Irvin. In the alternative, the court imposed a sentence of 24 months imprisonment under the guidelines.

Even assuming that *Irvin* applies to Anjum's case, the attribution of more than 1 kilogram of heroin to Anjum is amply supported by the record. A jury properly convicted Anjum of conspiracy. The evidence indicated that approximately 1.235 kilograms of heroin delivered to Special Agent Bass in August 1991 were connected to the conspiracy. Because Anjum was directly involved in collecting payment for the August 1991 delivery, it was reasonably foreseeable to him that the $85,000 in "big bills" he arranged to pick up from Afsar Khan was additional payment for the earlier distribution of a quantity of heroin in excess of 1 kilogram.

Because Anjum has not shown "actual prejudice" excusing his failure to object earlier to the drug quantity attributed to him at sentencing, the court holds that Anjum's claim is procedurally barred and does not address its merits.

### III.

Anjum next alleges that he was denied the effective assistance of counsel in violation of the Sixth Amendment. He claims that counsel made five separate errors that rendered his assistance ineffective: (1) failure to object to the imposition of a mandatory minimum sentence on the basis of between 1–3 kilograms of heroin; (2) failure to conduct an independent investigation and present evidence at trial of Tariq Mehboob's business activities; (3) failure to present evidence of Anjum's business activities and financial condition; (4) failure to consult with Anjum on the proper translation of critical wire intercepts; and (5) failure to secure a competent translator of Anjum's native language, Urdu.

■ Anjum must satisfy a two-prong test to obtain relief. See *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, he must show that his counsel's representation fell below an objective standard of reasonableness. In making this evaluation, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. at 2065 (citation omitted). Second, Anjum must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 694, 104 S.Ct. at 2068.

Anjum first contends that his counsel was ineffective for failing to object to the imposition of a mandatory minimum sentence on the basis of between 1–3 kilograms of heroin. This claim is without merit because, as discussed in Section II, the underlying determination of drug quantity was correct.

■ Anjum next claims that trial counsel was ineffective for failing to conduct an independent investigation and present evidence at trial of Tariq Mehboob's business activities. He claims that Tariq Mehboob is a money exchanger in Pakistan and that Mehboob should have been called to testify about the legitimacy of his currency exchange business and his contacting Anjum to collect the $85,000 for him. Anjum asserts that this testimony was important because it would indicate that he could have been misinformed as to the purpose of the $85,000 transfer.

Anjum has failed to provide any affidavits or other evidence to support this claim. He does not proffer that he told his attorney about Mehboob before trial and asked to have him subpoenaed, or that Mehboob was available to testify. Anjum's claim is far too vague to overcome the "strong presumption

that counsel's conduct falls within the wide range of reasonable professional assistance." *Roach v. Martin,* 757 F.2d 1463, 1476 (4th Cir.), *cert. denied,* 474 U.S. 865, 106 S.Ct. 185, 88 L.Ed.2d 154 (1985).

Even if the court were to conclude that the failure to call Tariq Mehboob constituted deficient performance, Anjum would only be entitled to relief if he could demonstrate a reasonable probability that presentation of the omitted evidence would have changed the result at trial. *E.g, Washington v. Murray,* 952 F.2d 1472, 1477 (4th Cir. 1991). Even if Mehboob had testified and been believed by the jury, his testimony would have no effect on the most damaging evidence against Anjum, his own voice on tape identifying himself as a "friend of Khalid" and arranging to pick up $85,000 in "big bills" from Afsar Khan. During another telephone contact, Afsar Khan stated to Anjum that the $85,000 was "drug money." Even after drug sniffing dogs alerted on the money and the money was confiscated, Anjum continued in his efforts to collect that money from the police. Given the strength of the evidence against Anjum, the court concludes that Mehboob's testimony was not "directly exculpatory evidence of a sufficiently high probative force probably to generate saving doubt." *Id.* at 1479.

Anjum next claims that his counsel was ineffective for failing to obtain his phone, financial, and business records. He asserts that these records reveal no large cash purchases and substantiate his claim that he did not maintain the lifestyle of someone in the illegal narcotics business. Given the ample evidence of Anjum's guilt, the court cannot conclude that a "reasonable probability" exists that Anjum would not have been found guilty had the evidence of his financial condition been presented. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Accordingly, this claim too is without merit.

Anjum next claims that his counsel was ineffective for failing to consult with him on the proper translation of critical wire intercepts. He alleges that some of the interceptions were erroneously translated. This claim fails because Anjum makes no attempt to specify the alleged inaccuracies or explain how they had any effect on the outcome of his trial.

Lastly, Anjum contends that his counsel was ineffective for failing to secure a competent translator of his native language, Urdu. Anjum claims that the court provided an interpreter who spoke Hindi, the language of India, and that he does not know Hindi, "so he was forced to rely on his modest English language abilities during trial."

This claim is not supported by the record. At his sentencing, Anjum gave his allocution in English. Anjum gave lengthy testimony at trial in English. Moreover, during the course of cross examination, Anjum testified that he speaks English, among other languages.

Even if the court were to conclude that counsel's failure to secure a competent translator of Anjum's native language, Urdu, amounted to deficient performance, Anjum has not shown that he was incapable of participating in his defense or otherwise demonstrated any prejudice. Therefore, this claim has no merit.

### IV.

Anjum next contends that the court erred in instructing the jury. As an initial matter, the court notes that Anjum's failure to object to the jury instructions at trial or raise this issue on direct appeal should act as a procedural bar absent a showing of cause and actual prejudice. *See United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594–95, 71 L.Ed.2d 816 (1982). However, the government has not contended, as it did on the issue of drug quantity, that Anjum defaulted this claim. Because procedural default is not jurisdictional, and is waived to the extent it is not raised by the government, *see, e.g., United States v. Hicks,* 945 F.2d 107, 108 (5th Cir.1991), the court reaches the merits of Anjum's claim.

### A.

Anjum claims that the court erred in failing to instruct the jury on any of the elements required for a conviction under the aiding and abetting statute. The court is not

persuaded. The evidence at trial did not warrant an instruction on a theory of aiding and abetting. The government contended that Anjum actually committed the crimes charged in the indictment. It did not contend that Anjum aided and abetted the commission of those crimes. Because the court instructed the jury only on the elements of the underlying offenses, the jury necessarily found that Anjum personally did every act constituting the offenses charged. It matters not that Anjum was charged both as a principal and as an aider and abetter. *See United States v. Oates,* 560 F.2d 45, 55 n. 6 (2d Cir.1977) ("[W]hen an indictment uses the 'aid and abet' phraseology, a conviction on the underlying offense can be obtained by proof that the so-called aider and abetter actually committed the underlying offense himself. In other words, in such circumstances proof of the commission of the underlying offense is sufficient to prove the so-called aiding and abetting offense specified in the indictment.").

■ Equally without merit is Anjum's claim that the court erred in instructing the jury as follows:

Once the conspiracy is in existence, the act and the statement of each member of the conspiracy is considered to be the act and the statement of each other member of the conspiracy, and each member of the conspiracy is therefore responsible for the acts and the statements of the other members of the conspiracy taken during the existence of the conspiracy, in furtherance of the conspiracy, just as if such person performed such act herself or himself.

Anjum asserts that this instruction is a misstatement of the law because it suggests that an individual can be held criminally liable for substantive offenses committed by members of the conspiracy before that individual joined the conspiracy. The court disagrees. The court's instruction was correct and could not have misled the jury because Anjum was not charged with any substantive offenses. *See United States v. Chorman,* 910 F.2d 102, 111 (4th Cir.1990) (concluding that an instruction nearly identical to the one given by the court here was "unassailable as a matter of law").

### B.

Anjum also contends that his counsel was ineffective for failing to object to the jury instructions. As noted above, the court did not err in instructing the jury. Therefore, the failure of counsel to pursue this claim did not prejudice Anjum.

### V.

■ Lastly, Anjum contends that the evidence was insufficient to support the jury's finding of guilt. Because this issue was fully considered and decided adversely to Anjum on direct appeal, *see United States v. Anjum,* No. 93–5537, 1994 WL 416422, at ** 3–4 (4th Cir. Aug.10, 1994) (unpublished), it is not subject to collateral attack. *See Boeckenhaupt v. United States,* 537 F.2d 1182, 1183 (4th Cir.), *cert. denied,* 429 U.S. 863, 97 S.Ct. 169, 50 L.Ed.2d 142 (1976).

### VI.

For the foregoing reasons, Anjum is not entitled to relief on any of his claims brought pursuant to 28 U.S.C. § 2255. Therefore, the motion is denied.