UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                          No. 00-4732

ANDREW JAMES MCGILL, JR.,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(CR-99-214-DKC)

Submitted: October 24, 2002

Decided: November 7, 2002

Before WIDENER, MOTZ, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

William C. Brennan, Jr., BRENNAN, TRAINOR, BILLMAN &
BENNETT, L.L.P., Upper Marlboro, Maryland, for Appellant.
Thomas M. DiBiagio, United States Attorney, Stuart A. Berman,
Assistant United States Attorney, James M. Trusty, Assistant United
States Attorney, Greenbelt, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Andrew James McGill, Jr., appeals his conviction on a jury verdict on a charge of conspiracy to distribute marijuana, in violation of 21 U.S.C. § 846 (2000). After trial but before sentencing, the Supreme Court issued its opinion in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). At sentencing, McGill claimed, *inter alia*, that under *Apprendi*, the absence of a jury finding on drug quantity limited the maximum sentence to five years under 21 U.S.C.A. § 841(b)(1)(D) (West 1999 & Supp. 2002). At sentencing, the district court rejected McGill's *Apprendi* claim, ruling that the statutory maximum for McGill's conspiracy conviction was twenty years under 21 U.S.C.A. § 841(b)(1)(C) (West 1999 & Supp. 2002). The district court sentenced McGill to 188 months imprisonment, three years supervised release, and a $100 special assessment. McGill appeals, claiming that this court should notice as plain error the 188-month sentence imposed because a specific threshold drug quantity relative to the conspiracy for which he was convicted was neither alleged in the indictment nor proven to the jury beyond a reasonable doubt. He further claims clear error by the district court relative to the quantity of marijuana the district court attributed to him for his role in the conspiracy. Finally, he claims the district court abused its discretion by limiting cross-examination of a government witness. For the reasons stated below, we affirm McGill's conviction and sentence.

Because McGill failed to challenge the indictment or object to the jury instructions on drug quantity before the jury verdict, this court reviews his sentence for plain error. Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-32 (1993). To find plain error, we must find that an error occurred, that the error was plain, and that the error affected McGill's substantial rights. *United States v. Promise*, 255 F.3d 150, 154 (4th Cir. 2001) (en banc) (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)), *cert. denied*, ___ U.S. ___, 122

S. Ct. 2296 (2002). If these three conditions are met, correction of the error remains within the sound discretion of the court, and we should not exercise that discretion unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings. *Id.*

In applying a plain error analysis in *United States v. Cotton*, ___ U.S. ___, 122 S. Ct. 1781 (2002), the Supreme Court reaffirmed its holdings in *Apprendi* and *Jones v. United States*, 526 U.S. 227 (1999), and declined to resolve whether defendants could show that the plain error affected their substantial rights, concluding that the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 1786. In analyzing the fourth prong of the plain error test, the Court found that the evidence supporting the conclusion that the narcotics conspiracy involved a threshold drug quantity was "overwhelming and essentially uncontroverted." *Id.* The Supreme Court noted that much of the evidence in *Cotton* revealed an involvement far greater than the relevant threshold drug quantity, and stated that the grand jury, having found that the conspiracy existed, also would have found that the conspiracy involved at least fifty grams of cocaine base. *Cotton*, 122 S. Ct. at 1786.

We have considered the evidence in this record and the arguments of the parties, and find that, applying the same rationale as that applied by the Supreme Court in *Cotton*, the error in McGill's sentence, while plain, did not affect the fairness, integrity, or public reputation of judicial proceedings, given the overwhelming and essentially uncontroverted evidence that the drug conspiracy of which McGill was convicted involved well over the fifty kilograms of marijuana on which his sentence was enhanced. *See Cotton*, 122 S. Ct. at 1785-86. Nor do we find clear error in the district court's finding that 1000 kilograms of marijuana were attributable and foreseeable to McGill considering his role in the conspiracy.

The evidence at the trial of this matter demonstrated the extraordinary scope and pace of drug sales involved in this conspiracy.[1] The

---

[1]A videotape used at trial illustrated the fast pace of drug sales in the vicinity of 37 Forrester. Cooperating witnesses all testified that sales were substantially faster in 1996 and 1997, during the time period

district court carefully reviewed the various evidentiary bases available to it concerning drug quantity. It relied upon the testimony of Erskine Hartwell, trial testimony from other sellers regarding the amount of marijuana sold, testimony of the surveillance officers, testimony about McGill's own purchases and attempted purchases of marijuana, and the videotape of the numerous drug transactions that occurred, to conclude, based upon a conservative version of the evidence and assuming only five pounds of marijuana were trafficked a day,[2] that substantially more than fifty kilograms of marijuana were involved in this ten-year conspiracy and over 1000 kilograms were attributable to McGill. Based upon the plethora of trial evidence that could have supported a drug quantity many times greater than that needed to invoke the enhanced sentencing range, we find that the evidence supporting the district court's findings as to the quantity of marijuana involved in this vast drug conspiracy is overwhelming and essentially uncontroverted. In addition, we find the district court's factual determination that 1000 kilograms of marijuana was foreseeable and attributable to McGill, based upon the duration of his membership in the conspiracy, to be sufficiently detailed and fully supported by trial evidence.

McGill advances several arguments to distinguish his case from *Cotton*, and to support his claim that the evidence against him was not overwhelming and essentially uncontroverted. He contends that the

---

McGill was found to have been directly involved in the conspiracy. A number of co-conspirators testified as to the extent of their personal knowledge of marijuana sales. Hilary Haynes testified that during the pertinent time he was selling 10 to 15 pounds of marijuana each week. Jeffrey Ewing testified that he was selling at least one-half pound of marijuana per day in 1996-97 and that approximately seven pounds per day were sold in his presence during that same period of time. Erskine Hartwell estimated that during 1996, each of the ten sellers identified at trial was selling one-half pound to a pound of marijuana per day near 37 Forrester. Even McGill, by counsel, admitted to the Probation Office that in his estimation, the conspiracy trafficked 130 pounds or 58.5 kilograms of marijuana each year, which would arguably total more than 500 kilograms.

[2]The government arguably demonstrated that marijuana sales in the vicinity of 37 Forrester approached ten pounds per day.

grand jury in his case engaged in a protracted process of adding and subtracting both drugs and defendants, that several charges against him were rejected by the grand jury, and claims that none of the earlier indictments in his case alleged any drug quantities. Also, McGill cites his specific objection to the drug quantity calculations in the presentence report, and claims that most of the evidence came from co-defendants who had entered into plea agreements with the government in exchange for their testimony. Finally, McGill asserts that the total quantity of marijuana that witnesses claimed McGill allegedly purchased, attempted to purchase, or attempted to sell was only three and 3/4 pounds, or 1.68 kilograms, and he contends that it is that amount only for which he should be held accountable.

We find these arguments to be without merit. That McGill objected to the drug quantity calculations in the presentence report and at the sentencing hearing does not change this court's analysis, nor does it preclude this court from affirming the district court's well-founded determinations as to the amounts of marijuana involved in this ten-year conspiracy, and the amount properly attributable to McGill. The jury clearly found a ten-year marijuana conspiracy, and the scope of that conspiracy was not limited to the amounts with which McGill personally was involved. Moreover, under the Sentencing Guidelines, the district court properly found that McGill was subject to sentencing based on the total quantity of marijuana reasonably foreseeable during the period McGill was involved in this wide-scale conspiracy. *U.S. Sentencing Guidelines Manuel* § 1B1.3, comment. (n.1) (1999); *see, e.g.*, *United States v. Irvin*, 2 F.3d 72, 78 (4th Cir. 1993). Also, *Cotton* does not limit plain-error analysis in narcotics cases to cases in which drug quantities were initially charged and later omitted. Because McGill was on notice of the specific drug quantities and possible penalties through the factual statements in the plea agreements of the testifying co-defendants which were provided to him and were part of the trial court record, any claim that he had no notice of the specific drug quantities for which he could be held accountable is without merit. Nor is the fact that some of the evidence supporting McGill's conviction and the district court's findings as to drug quantity came from testimony of his co-conspirators sufficient to set aside those findings, as McGill claims. *See, e.g.*, *United States v. Manbeck*, 744 F.2d 360, 392 (4th Cir. 1984). Finally, McGill's assertion that the facts that the petit jury rejected the government's claim of his

involvement in the crack portion of the conspiracy, acquitted him of interstate auto theft, and was unable to agree on the false statement count, do not support a different decision. Rather, the jury's findings relative to those other charges speak to those other charges and have no bearing on the jury's likelihood to have found that this conspiracy would have involved at least fifty kilograms of marijuana, had such a quantity been charged.

As to McGill's second issue on appeal, this court reviews the district court's limitation on a defendant's cross-examination of a government witness for abuse of discretion. *United States v. McMillon*, 14 F.3d 948, 955-56 (4th Cir. 1994). McGill's complaint is with the district court's limitation of the cross-examination of Officer Linda Lewis regarding a thirty-day suspension from the police department for withholding or failing to disclose a health-related condition to her superiors. McGill claims the district court's refusal to allow him to cross-examine her as to this issue was reversible error because Lewis was a major government witness whose credibility was strongly contested by McGill. He asserts his constitutional right of confrontation was abridged by the district court's ruling in this regard.

The district court has absolute discretion to curtail cross-examination based upon concerns about harassment, annoyance, prejudice, confusion of the issues, witness safety, repetition, humiliation, or relevance. *Id.* at 956; Fed. R. Evid. 611; *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Here, the district court allowed thorough and substantive inquiry by the defense into Lewis's credibility. In addition, Lewis was but one of several police officers providing testimony regarding McGill's involvement with the Forrester Street drug market. While she alone testified to several facts damaging to McGill, we find the district court properly weighed the value of allowing further cross-examination of Lewis against its probative value, and thus did not abuse its discretion in limiting McGill's cross-examination of her. Fed. R. Evid. 403; *United States v. Powers*, 59 F.3d 1460, 1467 (4th Cir. 1995).

Accordingly, we affirm McGill's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*