UNITED STATES

v.

**Thomas Morocco HAGER.**

No. 1:05cr264.

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 13, 2007.

John C. Kiyonaga, Kiyonaga and Kiyonaga, Joseph John McCarthy, Delaney McCarthy & Colton PC, Alexandria, VA, for Thomas Morocco Hager.

James L. Trump, Steven D. Mellin, United States Attorney's Office, Alexandria, VA, for United States.

## ORDER

T.S. ELLIS III, District Judge.

In this capital case, defendant Thomas Morocco Hager was tried and convicted of killing Barbara White while engaged in a conspiracy to traffic drugs in violation of 21 U.S.C. §§ 846, 841(a)(1), and 848(e)(1)(A). During trial, defendant made a number of motions that were ruled on from the Bench. At issue here is defendant's motion for a judgment of acquittal under Rule 29, Fed.R.Crim.P. made at the close of the government's case-in-chief. The purpose of this Order is to identify and elucidate the legal principles that governed the disposition of defendant's Rule 29 motion.

The facts established at trial are as follows. In 1993, and indeed prior to and following that year, defendant was regularly engaged in the sale and distribution of crack cocaine in and around Nelson Place, S.E., in Washington, D.C. In October of that year defendant shot Christopher Fletcher and Ric Pearson, two rival drug dealers from Ely Place, S.E., although he did not kill them. Defendant then went into hiding, fearing retaliation from other members of the rival Ely Place gang. Specifically, defendant chose to stay in hiding at the home of his girlfriend, Shenita King.

Shortly thereafter, King received a visit from her friend Barbara White at the Maryland apartment King was then sharing with defendant. White had dated William Seals, a member of the Ely Place gang, and had a child with him, but had subsequently distanced herself from him. Defendant nevertheless feared that White would reveal his whereabouts to the Ely Place gang. He therefore decided to kill Barbara White.

On November 29, 1993, King drove defendant and his two juvenile accomplices, Arlington Johnson and Lonnie Barnett, to Barbara White's apartment in Alexandria, Virginia. White, who had been feeding her thirteen-month-old daughter Alexis, invited the group into her home. As White took a phone call from a friend, the others seated themselves in the apartment's living room. When White completed her telephone conversation and began chatting with King, defendant crossed the living room, turned up the volume on the television, took out a handgun and struck White across the face with the gun, breaking her jaw in half and knocking out a tooth. He took White, crying and bleeding, into her bedroom where he directed Johnson and Barnett to find something with which to gag her. White was then gagged and

taken into the bathroom, where defendant filled the bathtub and directed White to get in. Having decided that firing a gun would draw too much attention, defendant dropped a curling iron into the tub in an unsuccessful attempt to electrocute White. He then told Johnson and Barnett to retrieve knives from the kitchen, which they did. Defendant then directed Johnson and Barnett to stab White, and all three then proceeded to stab her more than eighty times in her legs, chest, neck, face, hands, buttocks and back. More than one knife broke during the stabbing, and defendant directed Johnson and Barnett to retrieve more knives from the kitchen so the stabbing of White could continue. Next, defendant turned White face-down in the tub and pushed her face under water, holding her there to make sure, as he told Johnson and Barnett, that she was dead. After all, he said, he could "get the death penalty for this." All the while, King remained in the living room with White's infant daughter Alexis. Once defendant was satisfied that White was dead, he returned to the living room and removed the telephone receiver from the hook so callers would receive a busy signal. Then he, King, Johnson and Barnett departed, locking the door behind them and leaving thirteen-month-old Alexis alone in the apartment. On their way back to the District, defendant mocked White's pleas to spare her life and ridiculed White's concern for Alexis. He later boasted that Johnson and Barnett had proven themselves 'real soldiers' by their participation in White's brutal murder.

Defendant was tried before a jury over five weeks in October, 2007. The trial was trifurcated into three phases: (i) the guilt-innocence phase; (ii) the death penalty eligibility phase; and (iii) the death penalty selection phase, if necessary. As a result of the trial, the jury unanimously found beyond a reasonable doubt that defendant was guilty of the intentional killing

of Barbara White while engaged in a conspiracy to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), and 848(e)(1)(A). Next, the jury found that defendant was statutorily eligible for the death penalty, as the government proved beyond a reasonable doubt the statutorily required aggravating eligibility factors. *See* 21 U.S.C. § 848(j), (n) (1996). The jury then unanimously recommended that defendant be sentenced to death. Defendant was sentenced to death following the jury's recommendation pursuant to 21 U.S.C. § 848(l) (1996).

■ At the close of the government's case in chief, defendant moved for a judgment of acquittal pursuant to Rule 29, Fed.R.Crim.P. In support, defendant argued that the government failed to introduce evidence sufficient to allow a reasonable jury to find defendant guilty of the crime alleged in the indictment. Specifically, defendant argued that the statute required proof that the killing occurred in the course of a drug transaction. This argument fails.

Defendant was indicted under 21 U.S.C. § 848(e)(1)(A), which provides:

[A]ny person ... engaging in an offense punishable under section 841(b)(1)(A) of this title ... who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentences to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death.

The indictment further alleged that defendant conspired "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense" 50 grams or more of crack cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A).[1]

Defendant correctly argues that § 848(e)(1)(A) requires a substantive connection between the killing and the underlying § 841 offense.[2] Defendant contends

1. At the start of trial defendant moved to dismiss the indictment on the ground that § 848(e)(1)(A) applies by its terms only to persons engaging in an offense punishable under § 841(b)(1)(A), and not to persons engaging in a *conspiracy* to commit such an offense. *See* 21 U.S.C. § 846 ("Any person who ... conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.").

Defendant's contention that § 848(e)(1)(A) does not apply to conspiracies under § 846 is incorrect. The Fourth Circuit has clearly held that a conspiracy under § 846 is an offense under § 841. *See United States v. Irvin,* 2 F.3d 72, 75 (4th Cir.1993) ("[T]he penalties established under § 841(b) apply with equal force to *attempts and conspiracies* to violate the object offenses set forth in § 841(a).") (emphasis added). In fact, the Fourth Circuit addressed the precise argument defendant makes here in *United States v.*

*Williams,* holding that a conspiracy to distribute 50 grams or more of crack cocaine is punishable under § 848(e)(1)(A). *Williams,* 85 Fed.Appx. 341, 351 (4th Cir.2004) (unpublished) ("A conspiracy to distribute and possess with intent to distribute more than 50 grams of crack cocaine is 'an offense punishable under section 841(b)(1)(A).' Accordingly, we reject [defendant]'s contention that murder committed while a defendant is engaged in a conspiracy involving the distribution of in excess of 50 grams of crack cocaine is not punishable under Section 848(e)(1)(A)."). Accordingly, defendant's motion to dismiss the indictment was denied.

2. *See United States v. Tipton,* 90 F.3d 861, 887 & n. 13 (4th Cir.1996); *United States v. Beckford,* 966 F.Supp. 1415, 1417–18 (E.D.Va. 1997) ("[T]he Fourth Circuit has held that the Government must show a substantive connection between the murder and the predicate offense; that is, proof of temporal coincidence will not support a conviction.").

that the government failed to introduce evidence of such a substantial connection at trial. According to the defendant, the disjunctive language of § 848(e)(1)(A) creates two separate standards, one for persons "engaging in *or working in furtherance of* a continuing criminal enterprise" (CCE) and another for persons "engaging in an offense punishable under section 841(b)(1)(A)." According to defendant, under the more stringent § 841 standard it is not enough that the killing be done in furtherance of a conspiracy to distribute crack cocaine. Instead, defendant argues, the government must show that defendant was actually engaged in an act punishable under § 841 at the time of the killing, and that the killing was substantively connected to the § 841 offense.

Defendant points to no authority supporting his contention that § 848(e)(1)(A) creates two separate standards for CCE and § 841 offenses. In fact, there is no authority requiring the government to prove that a defendant charged under § 848(e)(1)(A) was actually engaged in an act punishable under § 841 at the time of the alleged killing. To the contrary, courts including the Fourth Circuit have recognized the applicability of § 848(e)(1)(A) in circumstances where the alleged killing was merely related to or in furtherance of an offense punishable under § 841.[3] Defendant's argument misapprehends the statute's meaning and purpose. Section 848(e)(1)(A) applies to killings done while engaging in an *offense*, not an act, punishable under § 841. An offense, of course, involves much more than a single

act. The statute is therefore not limited to killings that are contemporaneous with an act constituting a § 841 offense. Under the plain language of § 848(e)(1)(A) the government must only prove that defendant was engaged in an offense punishable under § 841 at the time of the alleged killing.[4]

■ The government has met this standard. At the time he killed Barbara White, defendant was engaged in an ongoing conspiracy to distribute crack cocaine in and around Nelson Place, S.E. The government introduced evidence that defendant, like many drug dealers, regularly carried a gun for protection (and, in defendant's case, intimidation and violence); that defendant shot Fletcher and Pearson, rival drug dealers, because they had stolen his gun; and that defendant killed White because he feared she would betray his location to Fletcher and Pearson's drug-dealing comrades, who were defendant's drug trafficking rivals. In other words, defendant killed White to eliminate a perceived threat to himself and his drug trafficking activities posed by rival drug dealers. Accordingly, the government presented more than ample evidence to allow a reasonable jury to find that (i) at the time of the killing, defendant was engaged in an offense punishable under § 841 and (ii) there was a substantive connection between the killing and the § 841 offense.

Accordingly, for the reasons stated herein, and for good cause,

---

**3.** In *United States v. Tipton,* the Fourth Circuit implicitly recognized the applicability of 21 U.S.C. § 848(e) in a variety of circumstances not involving a contemporaneous drug trafficking act. 90 F.3d 861, 868–70 (4th Cir.1996). The defendants in Tipton were severally convicted under § 848(e) for murdering between three and seven individu-

als, none of whom were murdered during the course of a drug transaction of any sort. *Id.*

**4.** As noted above, the Fourth Circuit treats a § 846 conspiracy to commit a § 841 offense as a § 841 offense for § 848(e)(1)(A) purposes. *See supra* note 1.

It is **ORDERED** that the defendant's motion for a judgment of acquittal is **DENIED.**

The Clerk is directed to send a copy of this Order to all counsel of record.