**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-4460

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

CHRISTOPHER FERGUSON, a/k/a Mark Thompson,
a/k/a Mark,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Leonard D. Wexler, Senior District Judge, sitting by designation.  (CR-03-345)

Argued:  March 16, 2007          Decided:  August 8, 2007

Before NIEMEYER, MICHAEL, and GREGORY, Circuit Judges.

Vacated and remanded by unpublished opinion.  Judge Gregory wrote the majority opinion, in which Judge Michael joined.  Judge Niemeyer wrote a dissenting opinion.

**ARGUED:** John Kenneth Zwerling, ZWERLING, LEIBIG & MOSELEY, P.C., Alexandria, Virginia, for Appellant.  Daniel Joseph Grooms, III, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:** Paul J. McNulty, United States Attorney, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

Christopher Ferguson was convicted by a jury of one count of conspiracy to possess with intent to distribute at least 1,000 kilograms of marijuana and one count of conspiracy to commit money laundering. Ferguson was acquitted of a third count of possessing a firearm in furtherance of drug trafficking. The district court then imposed a sentence of 235 months for the marijuana conspiracy count and a concurrent sentence of 235 months for the money laundering conspiracy count. Arguing that the district court failed to instruct the jury properly as to their finding of the threshold quantity of drugs for which he was responsible, Ferguson now appeals his sentence.

I.

In July 2003, a federal grand jury indicted Ferguson with conspiracy to possess with intent to distribute at least 1,000 kilograms of marijuana, in violation of 21 U.S.C. § 846; conspiracy to commit money laundering, in violation of 19 U.S.C. § 1956; and possession of a firearm in furtherance of drug trafficking, in violation of 21 U.S.C. § 924(c).[1] From October 14 through October 17, 2003, Ferguson was tried before a jury on these counts. During deliberations, the jury passed a note to the district court, making

_____

[1]A fourth count provided that if Ferguson were convicted on the drug conspiracy count, he would be forced to forfeit any property resulting from the conspiracy.

2

the following inquiry with respect to the marijuana conspiracy count:

> What is the relevance of the breakdown of the amount of marijuana involved in Count 1 on the verdict sheet? And does it relate specifically to the defendant or the entire conspiracy? Or is it the jury's interpretation?

J.A. 220. In response, the district court stated:

> It is not the jury's interpretation. It involves all those who were involved in the conspiracy. You add them all up, if they were members of the conspiracy, not only the defendant. He is charged in a conspiracy, not that he did it all by himself.

Id. After further deliberations, the jury convicted Ferguson of the marijuana conspiracy and money laundering conspiracy counts and acquitted him of the firearm count.

The presentence investigation report ("PSR") recommended that, with respect to the marijuana conspiracy count, Ferguson be held responsible for 3,000 to 10,000 kilograms of marijuana under U.S.S.G. § 2D1.1(a)(3) and (c)(3), thereby yielding a base offense level of 34. The PSR further added a 2-level enhancement for possessing a firearm under U.S.S.G. § 2D1.1(b)(2), a 2-level enhancement for victim-related conduct under U.S.S.G. § 3A1.3, and a 3-level enhancement for his aggravated role in the offense under U.S.S.G. § 3B1.1. Thus, the total offense level for the marijuana conspiracy count was 41.

In calculating the base offense level for the money laundering count, the PSR applied the base offense level (34) for the marijuana conspiracy count, the underlying offense from which the

3

laundered funds were derived, in accordance with U.S.S.G. § 2S1.1. The PSR also added a 2-level enhancement because Ferguson had been convicted under 18 U.S.C. § 1956, a 2-level enhancement for victim-related conduct under U.S.S.G. § 3A1.3, and a 3-level enhancement for his aggravated role in the offense under U.S.S.G. § 3B1.1. Thus, the total offense level for the money laundering count was also 41.

Because the marijuana conspiracy embodied conduct treated as a specific offense characteristic of the money laundering count, the PSR grouped the offenses together under U.S.S.G. § 3D1.2(c). The PSR applied the highest offense level of the two (although for both, the total offense level was 41) and a criminal history category of I, thus calculating a Guidelines range of 324 to 405 months.

At sentencing, Ferguson's counsel asserted that the district court's response, which charged the entire weight of the marijuana conspiracy to Ferguson, to the jury's query during deliberations was erroneous. The district court rejected this objection, remarking that it "has nothing to do with the sentence." J.A. 241. The district court thus adopted the PSR's finding of 3,000 to 10,000 kilograms of marijuana attributable to Ferguson. Although the district court declined to impose the 3-level enhancement for Ferguson's aggravated role in either the marijuana conspiracy or the money laundering, the district court applied the 2-level

4

enhancement for victim-related conduct. Finally, with respect to counsel's objection to the firearm enhancement, the district court responded:

> Under the first count, a level 38 is 235 to 293 months. Under-- without the gun charge, it's a level 36, which is 188 to 235. I'm going to give him the 235, which is the low end of 38 and high end of 36. I think it is appropriate, under these circumstances that that level stands.

J.A. 258. After being pressed by counsel for clarification, the district court stated "I'm giving him 38." J.A. 259. However, in the written judgment, the district court entered the total offense level as "36 or 38." J.A. 301. Moreover, the district court further wrote that "[f]ollowing argument of counsel as to the appropriate offense level, the Court makes no determination and sentences the defendant to 235 months, within both of these ranges." J.A. 301.

With respect to the money laundering count, the district court adopted the PSR's calculation and imposed a sentence of 235 months, to run concurrently with Ferguson's sentence of 235 months for the marijuana conspiracy count. Ferguson now appeals his sentence.

## II.

Section 841(b) of Title 21, the provision under which Ferguson was sentenced, sets forth a gradated penalty scheme based on the quantity of marijuana attributable to the defendant. See 21 U.S.C. § 841(b) (setting forth statutory maximums of life imprisonment for

5

1000 kilograms, 40 years for 100 kilograms, 20 years for 50 kilograms, and 5 years for any amount less than 50 kilograms). On appeal, Ferguson contends that his 235-month sentence for the marijuana conspiracy count cannot stand because the district court did not give a supplemental instruction in accordance with Pinkerton v. United States, 328 U.S. 640 (1946), which holds a defendant responsible only for conduct that is within the scope of his criminal agreement and reasonably foreseeable. Ferguson asserts that because the jury never determined the individualized quantity of marijuana attributable to Ferguson for the penalty purposes of § 841(b) and simply considered the entire weight of the conspiracy, his sentence relied on improper judicial fact-finding in contravention of the Sixth Amendment.

In a drug conspiracy case, a jury must apply the Pinkerton analysis both to the substantive conspiracy charge and to the determination of the threshold quantity of drugs for statutory penalty purposes. The government concedes that under United States v. Collins, 415 F.3d 304 (4th Cir. 2005), the district court erred by failing to instruct the jury to apply Pinkerton principles in determining the quantity of marijuana attributable to Ferguson for the penalty purposes of § 841(b). This case is indistinguishable from Collins, in which the defendant was convicted of conspiracy to distribute cocaine and the jury asked a nearly identical question about how they were to make the threshold quantity determination

6

required on the verdict form. Id. at 311-15. In Collins, we pointed out that Apprendi v. New Jersey, 530 U.S. 466. 490 (1990), requires that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The threshold quantity of drugs for statutory penalty purposes is a fact that a jury must find beyond a reasonable doubt. The jury must apply the Pinkerton principles to their calculation of threshold quantity to determine if the amount proven to be distributed by the conspiracy was within the scope of the defendant's agreement and reasonably foreseeable to the defendant. See Collins, 415 F.3d at 314.

Because they were not instructed under Pinkerton, Ferguson's jury consequently did not properly determine the statutory threshold quantity of marijuana attributable to Ferguson. In the absence of a jury determination or an admission of the quantity of marijuana attributable to Ferguson, Ferguson's conduct must fall within the default 5-year statutory maximum set forth in § 841(b). Ferguson's 235-month sentence, which was based solely on judicially-found quantities of marijuana attributable to Ferguson, therefore violates the Sixth Amendment. Id. at 314; see Apprendi v. New Jersey, 530 U.S. at 490.[2]

---

[2]As in Collins, the error did not affect Ferguson's conviction under §§ 841 and 846--neither of which require a threshold drug quantity for criminal liability. Collins, 415 F.3d at 314.

7

III.

We also conclude that the error affecting the conspiracy count undermines the court's sentencing for the money laundering count. We have held that proper sentencing under United States v. Booker, 543 U.S. 220 (2005), requires a correct application of the sentencing guidelines in addition to consideration of the factors enumerated in 18 U.S.C. § 3553(a). United States v. Green, 436 F.3d 449 (4th Cir. 2006). An improper calculation of the guidelines offense level renders the sentence unreasonable, and such a sentence must be vacated. Id. at 457.

The district court made no independent determination of drug quantity when it sentenced Ferguson on the money laundering count. The court, acting pursuant to the guidelines, imputed the base offense level for the conspiracy count to the money laundering count. The court rested that calculation of offense level on the jury's threshold quantity finding. In sentencing Ferguson for the money laundering count, the court therefore improperly relied on the quantity the jury determined without regard to Pinkerton principles. Without an independent determination of quantity for the second count, the court could and did not properly calculate, as required by Booker and Green, the guidelines range for the money

laundering count.[3]  Ferguson's sentence for money laundering must be vacated as unreasonable.

IV.

Following Collins, we will withhold judgment on the marijuana conspiracy count for thirty days and permit the government to choose between remand for resentencing under the 5-year maximum set forth in § 841(b) or remand for a new trial.  Collins, 415 F.3d at 315.[4]  Similarly, because the Guidelines imputed the base offense level determined for the marijuana conspiracy count to the money laundering count and the judge never made an independent calculation of offense level for the money laundering count, the

---

[3]Drug quantity determines base offense level for drug trafficking offenses, including money laundering if the underlying offense involves drug trafficking, as it does in Ferguson's case.. See U.S.S.G. §§ 1B1.3, 2D1.1, 2S1.1.  An independent determination of drug quantity by the court would have allowed the court to calculate the offense level properly and arrive at a sentence lesser than or comparable to the one imposed.

[4]Because the sentence must be vacated under Collins, we need not address Ferguson's constitutional arguments concerning the firearm enhancement imposed for the marijuana conspiracy count.  We note in passing, however, that the district court did not clearly indicate whether it adopted the enhancement, which would have increased the total offense level from 36 to 38.  Indeed, the district court stated in its written judgment that "[f]ollowing argument of counsel as to the appropriate offense level, the Court makes no determination and sentences the defendant to 235 months, within both of these ranges."  J.A. 301.  The district court's failure to specify the total offense level was error under United States v. Green, 436 F.3d 449, 456 (4th Cir. 2006), which requires district courts to calculate the proper Guidelines range and consider that range in conjunction with the other factors set forth in 18 U.S.C. § 3553.

235-month sentence for the money laundering count also cannot stand. We therefore withhold judgment on the money laundering count and will remand for proceedings consistent with the option chosen by the government for the marijuana conspiracy count.

<u>VACATED AND REMANDED</u>

NIEMEYER, Circuit Judge, dissenting:

A jury convicted Christopher Ferguson of (1) conspiracy to possess with intent to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. § 846, and (2) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). Following United States v. Booker, 543 U.S. 220 (2005), the district court sentenced Ferguson to 235 months' imprisonment on each count, to run concurrently.

On appeal, Ferguson contends (1) that during the trial, the district court misinstructed the jury on the drug conspiracy count (an error he did not raise until six months after his conviction); and (2) that his sentence was improperly enhanced on the basis of acquitted conduct (as alleged in Count III, charging him with possession of a firearm in relation to a drug trafficking crime).

Because Ferguson forfeited any error in the jury instructions by failing to make a timely objection, see Fed. R. Crim. P. 30(d) (requiring an objection to be made before the jury retires), we review the alleged error under the plain-error standard of Rule 52(b). Regardless of the standard for review, however, the district court did not err in instructing the jury on conspiracy law, and there was no predicate to require an instruction under United States v. Collins, 415 F.3d 304 (4th Cir. 2005), as Ferguson contends and the majority presumes. Moreover, even if a Collins instruction were appropriate, the alleged error was harmless, as

11

the evidence of Ferguson's participation in a conspiracy involving the distribution of 1,000 kilograms or more of marijuana was overwhelming. Indeed, the evidence demonstrated that Ferguson was extensively involved in a conspiracy that distributed up to 9,000 kilograms of marijuana.

As for Ferguson's claim that the district court improperly relied on acquitted conduct (possession of a gun in relation to a drug trafficking crime) to enhance Ferguson's sentence two levels, under U.S.S.G. § 2D1.1(b) (possession of a "dangerous weapon"), that claim must be rejected. See United States v. Duncan, 400 F.3d 1297, 1304-05 (11th Cir.), cert. denied, 126 S. Ct. 432 (2005); United States v. Williams, 399 F.3d 450, 454 (2d Cir. 2005).

The majority relies exclusively on the district court's failure to comport fully with Collins to order a new trial or a much reduced sentence. This approach is fundamentally flawed in several respects.

First, the majority opinion fails to recognize that any Collins error was forfeited, not having been timely raised below when it could have been remedied. Ferguson raised the issue some six months after the jury returned its verdict and was dismissed. Second, with respect to applying Collins, there was no predicate in this case for submitting a reasonable-foreseeability instruction to the jury because Ferguson was not charged with any of the substantive offenses as objects of the conspiracy. The

12

instructions given were entirely consistent with the law of conspiracy and indeed with <u>Collins</u>.  <u>Third</u>, any error was harmless in light of the evidence in this case, which overwhelmingly supported Ferguson's full knowledge of the scope of the conspiracy. The majority addresses none of these issues.

As egregious as the majority's application of <u>Collins</u> is, its sua sponte vacatur of the sentence on the money laundering account is plainly and demonstrably wrong, because any error with respect to the drug conspiracy count in no way affected the sentencing for the money laundering count.  The majority fails to recognize that the drug quantity found <u>by the jury</u> on the drug conspiracy count was not, and could not be, the basis for the drug quantity found <u>by the court</u> on the money laundering count.  The conviction and sentence on the money laundering were independent of the alleged <u>Collins</u> error and therefore must be affirmed under any legal or logical analysis.

I would therefore affirm the judgment of the district court.


I

Ferguson was charged in a four-count indictment along with six named coconspirators.  Count I alleged conspiracy to possess with intent to distribute and to distribute 1,000 kilograms or more of marijuana; Count II alleged conspiracy to commit money laundering; Count III alleged possession of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and Count IV

13

sought forfeiture of drug related assets if Ferguson were to be convicted under Count I, the drug conspiracy count.  The jury returned guilty verdicts on Counts I and II, expressly finding with respect to Count I that the conspiracy involved 1,000 kilograms or more of marijuana.  The jury acquitted Ferguson under Count III, which charged him with illegal gun possession.

During the course of the trial, Ferguson made no objections to the jury instructions relating to the drug conspiracy count.  In response to the district court's inquiry about whether the "defense ha[d] any objections to the charge," Ferguson replied, "No, Your Honor."  He made no objection to the instructions at the time they were given and, in fact, agreed, after they were given, that the court had properly read the instructions, which had previously been agreed to.  Finally, Ferguson made no objection to the instructions before the jury retired to deliberate, the latest permissible time for objection to jury instructions.  See Fed. R. Crim. P. 30(d) (requiring that an objection to jury instruction be made before "the jury retires to deliberate").  Nor did Ferguson object when the judge responded to a note from the jury asking how to assess drug quantity.

Over six months later, after the presentence report had been prepared, Ferguson was sentenced for his convictions on Counts I and II.  While Ferguson made several written objections to the presentence report, he did not object to the drug quantity found in

14

the report, i.e., that he was responsible for 3,000 to 10,000 kilograms of marijuana. For the first time, however, Ferguson did contend that the district court should have instructed the jury in accordance with <u>United States v. Pinkerton</u>, 328 U.S. 640, 647-48 (1946), that Ferguson was responsible for only the drug quantity attributable to him. Ferguson's counsel stated:

The Court:       You're objecting to the jury's findings?

Counsel for Ferguson:

> No, no. What I'm saying to the Court is, the jury, during the course of proceedings on day two, they came into the Court and asked the Court whether or not they could find the weight attributable directly to this defendant, or whether or not it was the weight of the conspiracy. The Court charged the weight of the conspiracy.

*     *     *

The Court:       You can go to the Fourth Circuit if I'm wrong. It has nothing to do with the sentence.

The district court, of course, could not correct the alleged error, and the court treated the objection as only an objection to its sentencing of Ferguson as a member of a conspiracy involving the distribution of 1,000 kilograms or more of marijuana.

Ferguson also objected to the district court's enhancement for Ferguson's possession of a firearm in relation to a drug trafficking crime. He contended that the jury had considered evidence of the conduct and rejected it and that now, under <u>Booker</u>,

15

the district court was not free to find that fact for enhancement of his sentence under U.S.S.G. § 2D1.1(b)(1). In addition to the fact that the district court was entitled to base a sentence on acquitted conduct, the district court indicated that the two-level enhancement for the gun charge would not affect the 235-month sentence that it had selected, because that sentence was included in the sentencing range for both the offense level without the enhancement and the offense level that included the enhancement.

The court ultimately sentenced Ferguson to 235 months' imprisonment on each count, to run concurrently, and this appeal followed.

II

Ferguson's principal point on appeal is that the district court violated his Sixth Amendment right to trial by jury when it failed to instruct the jury properly to find the amount of drugs attributable to Ferguson himself instead of to the conspiracy. He argues that the instruction would have allowed the jury to find a smaller drug quantity attributable to him and therefore would have allowed the jury to deny liability for the greater statutory offense under the scheme of 21 U.S.C. § 841(b).

The district court became aware of Ferguson's argument for the first time when he mentioned it over six months after the jury returned its verdict, during the sentencing hearing. Yet, under Rule 30(d), the objection could only have been timely if made

16

before the jury retired to deliberate. Ferguson's attempt to object to the jury instruction and the court's answer to the jury at sentencing thus was plainly untimely. Not only was it untimely under the Rule, Ferguson's timing denied the court any opportunity to correct the error.

As a result of Ferguson's untimely objection, our review can only be for plain error, not the de novo review apparently undertaken by the majority. See United States v. Olano, 507 U.S. 725, 731 (1993) (quoting with approval Yakus v. United States, 321 U.S. 414, 444 (1944) ("No procedural principle is more familiar to this Court than that a . . . right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it")) (emphasis added).

The rule requiring timely objection is not simply a legal trap or empty formalism. The rule exists so that the trial judge can deal with problems in the trial when they arise. It protects district courts from heavy-handed review and reversal when the court could not be expected to have corrected the error. And most importantly, the rule exists to prevent the defendant from sitting on his rights at trial and awaiting the outcome of the proceeding -- obtaining an unreviewable acquittal if he wins and obtaining a mulligan if he loses. The majority's willingness to allow a defendant to preserve error by objecting six months after the

17

objection was required undermines every purpose of the rule.  As

the Supreme Court has said,

> We think that the [majority's approach] may encourage
> "sandbagging" on the part of defense lawyers, who may
> take their chances on a verdict of not guilty in a []
> trial court with the intent to raise their [] claims in
> [an appeals] court if their initial gamble does not pay
> off. . . .
>
> The failure of the [] courts . . . to require compliance
> with a contemporaneous-objection rule tends to detract
> from the perception of the trial of a criminal case . .
> . as a decisive and portentous event. A defendant has
> been accused of a serious crime, and this is the time and
> place set for him to be tried by a jury of his peers and
> found either guilty or not guilty by that jury. To the
> greatest extent possible all issues which bear on this
> charge should be determined in this proceeding:  the
> accused is in the courtroom, the jury is in the box, the
> judge is on the bench, and the witnesses, having been
> subpoenaed and duly sworn, await their turn to testify.
> Society's resources have been concentrated at that time
> and place in order to decide, within the limits of human
> fallibility, the question of guilt or innocence of one of
> its citizens. Any procedural rule which encourages the
> result that those proceedings be as free of error as
> possible  is  thoroughly  desirable,  and  the
> contemporaneous-objection rule surely falls within this
> classification.

Wainwright v. Sykes, 433 U.S. 72, 89-90 (1977).

The majority's approach also tramples Rule 52(b) and the

governing principles of Olano, which require Ferguson to

demonstrate error that was plain and that affected his substantial

rights.  See Olano, 507 U.S. 725.  Our court, considering several

cases identical on their facts, has found that a Collins error was

not the sort of grave error meriting reversal on plain error

review.  See United States v. Harris, 215 Fed. Appx. 262, 279 (4th

18

Cir. 2007) (per curiam); <u>United States v. Mitre</u>, 209 Fed. Appx. 249, 252 (4th Cir. 2006) (per curiam); <u>United States v. Andaya-Penalosa</u>, 198 Fed. Appx. 314, 316 (4th Cir. 2006) (per curiam). We should follow the typical practice of our court and hold that any error needed to be preserved for our review, and any error not preserved is forfeited, absent an extraordinary showing that Ferguson cannot make and has not attempted to make. <u>See</u> <u>Olano</u>, 507 U.S. at 733-35.

III

In the context of all of the instructions given to the jury and of the facts of the case, the challenged instruction accurately states the law of conspiracy. Therefore, Ferguson was properly convicted for the drug trafficking conspiracy.

A "conspiracy is a distinct offense from the completed object of the conspiracy." <u>Garrett v. United States</u>, 471 U.S. 773, 778 (1985). It is an inchoate crime, and one can be held liable for conspiracy whether or not the object offense is ever completed. <u>See</u> <u>Ianelli v. United States</u>, 420 U.S. 770, 777 & n.10 (1975). The gravamen of conspiracy is agreement to commit a crime or series of crimes. Thus, "[t]o prove [a drug conspiracy], the Government must establish that (1) an agreement to possess [illicit drugs] with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy." <u>United States</u>

19

v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (en banc).  Upon proof of these elements, each conspirator becomes liable for conspiracy to the extent of the entire scope of the conspiracy -- i.e. all acts done in support of the criminal purpose.  See United States v. Banks, 10 F.3d 1044, 1054 (4th Cir. 1993).  This broad liability, resting on agreement, is distinct from liability under Pinkerton for the substantive crimes committed by one's coconspirators.  See 328 U.S. at 647.  Conspiracy liability rests simply on the acts of the conspiracy as a whole.  Burgos, 94 F.3d at 857.

But a conspirator may also be held liable for the underlying substantive crimes committed by members of the conspiracy, regardless of whether he was aware that those crimes were being committed.  Members of the conspiracy act as each other's agents, and any act performed by one conspirator within the scope of the agreement is the act of each other conspirator.  Id.; United States v. Irvin, 2 F.3d 72, 75 (4th Cir. 1993) ("As we have recognized, [Pinkerton] controls questions of an individual defendant's criminal liability for acts done by others in furtherance of conspiratorial activity"); United States v. Miley, 513 F.2d 1191, 1208 (2d Cir. 1975) ("the Pinkerton charge . . . permits a jury to find a defendant guilty on a substantive count without specific evidence that he committed the act charged") (emphasis added).  Thus, the Pinkerton holding serves to impute liability for substantive offenses to coconspirators for acts committed in the

course of the conspiracy.  In doing so, however, _Pinkerton_ imposes additional proof requirements.  To hold a conspirator liable for the substantive offenses of coconspirators, _Pinkerton_ requires (1) that the offense be committed in furtherance of the conspiracy; (2) that the offense "fall within the scope of the unlawful project"; and (3) that the offense be reasonably foreseeable as "a necessary or natural consequence of the unlawful agreement."  _Pinkerton_, 328 U.S. at 647-48.  But _Pinkerton_ does nothing to constrict the traditional criteria for proving the crime of conspiracy, which consists of an agreement to commit one or more crimes.  Properly understood, then, _Pinkerton_ principles _expand_ criminal liability, rather than contract it.  As even the _Collins_ decision stated,

> The principles outlined in _Pinkerton_, however, have no applicability to a conviction under [21 U.S.C.] § 846. _Pinkerton_ principles are relevant _when a conspirator is charged with a substantive offense_ arising from the actions of a coconspirator, not when a conspirator is charged with conspiracy.  Because [the indictment] charges Collins with conspiracy [], and not a substantive offense, the district court's answer to the jury's question, as well as its original conspiracy instruction . . . is unassailable as a matter of law.

_Collins_, 415 F.3d at 313 (emphasis added).  The _Pinkerton_ requirements for proving substantive acts through the conspiracy are thus necessary because _Pinkerton_ relates to substantive liability, but have no application when the defendant is charged _only_ with conspiracy, as here.

Ferguson was charged only with conspiracy, and his criminal liability for conspiracy to distribute 1,000 kilograms or more of

21

marijuana was perfected as soon as he agreed with his coconspirators to distribute drugs.  In accordance with the common law of conspiracy, it is the scope of that agreement that defines his liability under 21 U.S.C. § 846.  Because <u>Pinkerton</u> concerns itself a conspirator's responsibility for the substantive crimes committed by other conspirators, it does not apply here.  Thus, the district court properly instructed the jury as to conspiracy liability, both in its initial instruction and in its response to the jury's note, and it need not have considered any instruction under <u>Pinkerton</u> or under the later-to-be decided <u>Collins</u>.  Following <u>Burgos</u>, our leading case on conspiracy, the district court instructed the jury as follows:

> A conspiracy is an agreement between two or more persons to join together to accomplish some unlawful purpose.  It is a kind of partnership in crime in which each member becomes the agent of each other member.
>
> For you to find the defendant guilty, you must be convinced that the Government has proved each of the following beyond a reasonable doubt: 1, two or more persons reached an agreement or came to an understanding to commit a crime; namely, either to possess with intent to distribute [] marijuana or to distribute marijuana.
>
> 2, that the defendant voluntarily and intentionally joined the agreement or understanding either at the time it was first reached or at some later time while it was still in effect.
>
> And 3, at the time defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding.

\*     \*     \*

22

One may become a member of a conspiracy without knowing all of the alleged details of the unlawful scheme or the identities of all the alleged conspirators.

* * *

If a defendant understands the unlawful nature of the plan or scheme, and knowingly and intentionally joined in that plan or scheme on one occasion, that is sufficient to convict him for the conspiracy even though the defendant had not participated before and even though the defendant played only a minor part.

* * *

Similarly, the Government need not prove that all of the details alleged in the indictment were actually agreed upon or carried out.

In addition to that formal charge, the judge answered a question from the jury: "What is the relevance of the breakdown of the amount of marijuana involved in Count 1 on the verdict sheet? And does it relate specifically to the defendant or the entire conspiracy? Or is it the jury's interpretation?" The judge replied: "It is not the jury's interpretation. It involves all those who were involved in the conspiracy. You add them all up, if they were members of the conspiracy, not only the defendant. <u>He is charged in a conspiracy, not that he did it all by himself</u>." (Emphasis added).

The original charge and the additional answer given by the district court are completely consistent with the law of conspiracy, the only crime with which Ferguson was charged. These instructions correctly told the jury that a conspirator is liable for the acts of the entire conspiracy (1) if an agreement existed;

23

(2) if Ferguson joined the agreement; and (3) if Ferguson knew the purpose of the agreement when he joined.  Here, because Ferguson was not charged with the underlying substantive offenses of the conspiracy, there was no need to instruct the jury on Pinkerton's additional requirements.

Ferguson's trial defense was to claim that he was personally responsible only for five pounds of marijuana that he sold to the government and knew nothing of the conspiracy.  This theory, however, failed to advance the argument raised on appeal that Ferguson was a member of the conspiracy but could not foresee the amount of drugs involved.  As important, Ferguson never put forth a defense that he did not agree to the conspiracy with which he was charged.  Moreover, Ferguson did not challenge or even question the drug quantity attributable to the conspiracy.  Under standard conspiracy law, Ferguson was liable for all of the acts of coconspirators in furtherance of the conspiracy, and in the absence of substantive charges of drug distribution, the Pinkerton limitations were irrelevant.

The district court acted properly in not confusing the jury with the inapplicable Pinkerton limitations or the type of instruction later imposed by our decision in Collins, which had not yet been decided.

Once conspiracy liability is determined, the defendant is "subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846. Since violation of 21 U.S.C. § 841 was the object of the offense, Ferguson is subject to the penalties outlined in § 841(b).

Section 841 sets up a gradated penalty scheme, in which a defendant is subject to different statutory maximums and minimums, depending on the quantity of drugs manufactured, distributed, or dispensed. See 21 U.S.C. § 841(b). Prior to Apprendi v. New Jersey, 530 U.S. 466 (2000), those threshold drug quantities were sentencing facts for the judge to decide. See United States v. Irvin, 2 F.3d 72, 75-77 (4th Cir. 1993). Our pre-Apprendi jurisprudence held that in pari materia with the Sentencing Guidelines, a conspiracy defendant should be held accountable only for those drug transactions he could have been charged with substantively under § 841. Id. at 77-78; cf. U.S.S.G. § 1B1.3. Accord United States v. Ruiz, 43 F.3d 985, 989-90 (5th Cir. 1995); United States v. Chitty, 15 F.3d 159, 162-63 (11th Cir. 1994); United States v. Young, 997 F.2d 1204, 1209-10 (7th Cir. 1993); United States v. Becerra, 992 F.2d 960, 966-67 (9th Cir. 1993); United States v. Martinez, 987 F.2d 920, 923-26 (2d Cir. 1993); United States v. Jones, 965 F.2d 1507, 1517 (8th Cir. 1992).

Since Apprendi, however, in conspiracy cases under 21 U.S.C. § 846, we have held that the jury, not the judge, must make the threshold drug quantity determination. See Collins, 415 F.3d at 314. Apprendi held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In doing so, the Supreme Court equated sentencing factors that increased the possible penalty for a crime with elements of the offense which must be proved beyond a reasonable doubt. Id. at 478-81. This holding did not simply shift functions from judge to jury; it also converted some facts previously regarded as sentencing facts into elements of the offense. See United States v. Promise, 255 F.3d 150, 157 (4th Cir. 2001) (en banc) ("the specific threshold quantity must be treated as an element of an aggravated drug trafficking offense") (emphasis added).

Thus, because the threshold quantity determination under § 841(b) is now an element of an aggravated drug offense, the threshold quantity determination for a conspiracy must be determined by the jury in accordance with traditional conspiracy principles, which hold conspirators liable for agreeing to all the acts of the entire conspiracy.

Sentencing for conspiracy takes place in a completely separate hearing, and at that time, the sentencing judge evaluates the individual conspirator's liability for drug quantity, as required

26

by the Sentencing Guidelines.  See U.S.S.G. § 1B1.3.  And after Booker, 543 U.S. at 220, the judge has discretion to individualize the sentence in light of his finding of drug quantity.

Collins, which was decided after the trial and sentencing in this case, conflates the liability phase of the criminal proceeding with the sentencing phase, to much confusion.  It ignores that Irvin was a response to the unique historical circumstances where both the threshold drug quantity and the final drug quantity were sentencing questions for the judge.  Since under Apprendi and Promise, the threshold drug quantity has become an element of the offense, not a part of the sentencing proceeding, there is no longer any reason to apply Pinkerton principles where even Collins recognizes they do not belong -- where the defendant is charged with conspiracy.  The question under the statute is simple – when a defendant agrees to join a drug conspiracy, what is the size of the conspiracy he agreed to join?  And that determination fixes the statutory penalty range under 21 U.S.C. § 841(b).

This must be the test, because conspiracy is an inchoate crime, meaning that drug quantity must often be determined even when no perfected acts of drug distribution have occurred.  As in some cases, we know here the ultimate size of the conspiracy, because it resulted in the actual commission of numerous acts of drug dealing.  But in many cases, the conspiracy remains inchoate, with agreement but without any completed drug sales punishable

27

under 21 U.S.C. § 841.  In such a case, indeed in every conspiracy case, <u>the scope of the agreement</u> is the only benchmark for determining drug quantity.

Yet <u>Collins</u> would seem to require an analysis based on individual acts of drug distribution that have not yet occurred and may never occur.  Because drug quantity must often be calculated on a forward-looking basis in conspiracy cases, the jury must evaluate that quantity based the scope of the conspiratorial agreement and could not undertake the inquiry required by <u>Collins</u>.

Moreover, <u>Collins</u>' confusion systematically undermines the deterrent effects of the federal drug laws.  Conspiracies pose unique dangers because of their ability to channel the efforts of multiple people into a single illegal project, permitting greater coordination, secrecy, and scale.  The harm posed by an individual joining a conspiracy thus depends on the size of the conspiracy -- i.e. the level of social danger that conspiracy crime poses.  Under <u>Collins</u>, the punishment relates only to the extent of the harm <u>foreseeable</u> to the individual, not the extent of the harm the conspiracy actually poses.  This, of course, underdeters and underpunishes conspiratorial conduct.  In addition, and more perniciously, the <u>Collins</u> approach would appear to allow conspiracies to decrease their exposure by compartmentalizing their operations, segmenting responsibilities, and otherwise keeping members from knowing the full extent of the conspiracy.

Other circuits have rejected the argument that <u>Pinkerton</u> should apply to a threshold drug quantity determination under 21 U.S.C. § 841(b) in conspiracy-only cases, let alone that an instruction that omits all of <u>Pinkerton</u>'s subtleties is erroneous. I agree with the observation that

> in a drug conspiracy case, the jury should determine the existence vel non of the conspiracy as well as any facts about the conspiracy that will increase the possible penalty for the crime of conviction beyond the default statutory maximum; and the judge should determine, at sentencing, the particulars regarding the involvement of each participant in the conspiracy. . . . This means that once the jury has determined that the conspiracy involved a type and quantity of drugs sufficient to justify a sentence above the default statutory maximum and has found a particular defendant guilty of participation in the conspiracy, the judge lawfully may determine the drug quantity attributable to that defendant and sentence him accordingly (so long as the sentence falls within the statutory maximum made applicable by the jury's conspiracy-wide drug quantity determination).

<u>Derman v. United States</u>, 298 F.3d 34, 42-43 (1st Cir. 2002). <u>Accord</u> <u>United States v. Stiger</u>, 413 F.3d 1185, 1192-93 (10th Cir. 2005); <u>United States v. Phillips</u>, 349 F.3d 138, 141-43 (3d Cir. 2003), <u>vacated and remanded on other grounds sub nom</u> <u>Barbour v. United States</u>, 543 U.S. 1102 (2005); <u>United States v. Knight</u>, 342 F.3d 697, 710-11 (7th Cir. 2003); <u>United States v. Turner</u>, 319 F.3d 716, 722-23 (5th Cir. 2003). <u>But see</u> <u>United States v. Banuelos</u>, 322 F.3d 700 (9th Cir. 2003) (requiring threshold drug quantity under in conspiracy cases to be individualized by the jury using <u>Pinkerton</u>). Our court under <u>Collins</u> is an outlier, and for good reason.

Because <u>Collins</u> was wrongly decided or, at best, is confusing and because it is out of step with so many of our sister circuits, it should be overruled or clarified at the earliest opportunity by this court sitting en banc. But, in any event, <u>Pinkerton</u> is not, and <u>Collins</u> should not be, applicable here, because Ferguson was not charged with substantive offenses that were the object of the conspiracy.

V

It is thus readily demonstrable that the district court committed no error in charging the jury with traditional conspiracy principles and in answering the jury's question as it did. But even if it were error to have the jury find the drug quantity attributable <u>to the conspiracy</u>, as distinct from finding drug quantities attributable to individual members of the conspiracy, and if the error were preserved, it was nonetheless harmless.

The majority confuses the question of Sixth Amendment error under <u>Apprendi</u> with the usual judicial remedies for erroneous jury instructions. This is not a case where the jury failed to make a finding as to drug quantity. The jury <u>did</u> make a finding as to drug quantity: "Did the conspiracy involved in Count One involve 1,000 kilograms or more of marijuana? A: Yes." Any error, then, is not Sixth Amendment error (the error that results from having a fact determined by a judge rather than a jury) but is simply an error of instruction. Ferguson can therefore make no credible

30

claim that he lost his right to a jury trial, which would entitle him to at least a resentencing. See United States v. Hughes, 396 F.3d 374 (4th Cir. 2005). As a result, the majority, even on the erroneous understanding that the error was preserved, should have conducted a harmless error analysis, taking into account the entire instruction and facts of the case. See, e.g., United States v. Knight, 342 F.3d at 712.

The facts demonstrate that Ferguson was a mid-level player in a huge drug conspiracy responsible for distributing about $25 million worth of marijuana in Maryland, Virginia, and Washington, D.C. There can be no doubt that each and every sale of drugs was both within the scope of the conspiracy and foreseeable to Ferguson.

> Co-conspirators are liable for the reasonably foreseeable acts of another co-conspirator taken in the course of and in furtherance of the unlawful agreement, regardless of whether they had actual knowledge of those acts, so long as they played more than a minor role in the conspiracy or had actual knowledge of at least some of the circumstances and events culminating in the reasonably foreseeable event.

United States v. Baker, 432 F.3d 1189, 1235 (11th Cir. 2005).

Ferguson lived with his cousin, the brother of the principal conspirator, in a home owned by Ferguson's mother. Substantial amounts of cash ($49,000) were found in his bedroom, though Ferguson had never filed a tax return. Two firearms were found under his mattress when the conspiracy involved many firearms. And

Ferguson was pulled over in Los Angeles, traveling in a van that contained $277,000 in cash, bundled with rubber bands.

Two couriers in the conspiracy testified that Ferguson personally took delivery of several cars containing over 300 pounds of marijuana when the couriers brought it to the Washington, D.C., area.  He was part of a group that instructed the couriers where to go and what to do.  He purchased airplane tickets for several of his coconspirators in connection with the conspiracy.

A coconspirator testified that he saw Ferguson in his house with large barrels of marijuana on numerous occasions, and that Ferguson sold him large quantities of marijuana.  He saw Ferguson at the scene when the conspiracy unloaded tractor trailers and U-Haul trucks filled with marijuana.  He and the defendant often pooled their money to purchase marijuana.

Ferguson regularly drove for the conspiracy.  On at least one occasion, Ferguson drove while his coconspirators threatened to kill two couriers who had lost drug money.  He drove couriers to the airport, who then flew to Phoenix and procured marijuana, over 350 pounds of which was found in their vehicles on a trip.  Those couriers had, on over 15 occasions, driven currency and drugs between California and Arizona, and Washington, D.C.

Also found near Ferguson's bedroom were tally sheets constituting the conspiracy's records of drugs sold and money owed.

These records reflected the enormous extent of the conspiracy's operations.

The evidence cumulatively shows that Ferguson was fully aware of the operations of the conspiracy, and was involved in drug sales and money laundering. When he dropped drug couriers off at the airport, he was certainly aware of the general quantities of drugs that were being transported. And when he received the marijuana, in 300-pound quantities, he was aware of a large drug conspiracy. Pinkerton does not require that Ferguson have oversight over or even specific knowledge of every operation of the conspiracy. It only requires that the conspiracy's dealings be reasonably foreseeable to him. Without question, Ferguson was aware that he was part of a huge, sprawling, transcontinental narcotics scheme, and no reasonable jury could have found otherwise.

In light of the extensive evidence tying Ferguson to all of the drugs involved in the conspiracy, Ferguson certainly foresaw at least the quantity of drugs found by the jury, and any instructional error was harmless.

VI

Quite distinct from the alleged Pinkerton/Collins error, Ferguson was properly and legally sentenced for conspiracy to launder money, in violation of 18 U.S.C. § 1956(h), and there is no basis, legal or otherwise, for vacating the sentence on that Count.

33

First, Ferguson has made no allegation that his money laundering conviction was flawed. Indeed, in his opening brief, he did not even challenge any part of his conviction or sentence, and properly so. Only after the government argued that the conviction and sentence on Count II must remain standing because they were independent of any <u>Pinkerton</u> instruction error did Ferguson respond with a generalized claim that the whole process was flawed.

Ferguson was sentenced on Count II pursuant to U.S.S.G. § 2S1.1(a), which states that the offense level is "(1) The offense level for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offense (or would be accountable for the underlying offense under subsection (a)(1)(A) of § 1B1.3 (Relevant Conduct)); and (B) the offense level for that offense can be determined . . . ." The offense level for money laundering thus depends on the offense level of the underlying offense that produced the money to be laundered -- in this case, drug trafficking. Notably, however, nothing in § 2S1.1 depends on a drug quantity <u>found by the jury</u>, nor does the Guideline even require that the defendant be convicted of the underlying (drug) offense or, for that matter, charged with the underlying offense. Any error during the liability phase with respect to the drug conspiracy count has absolutely no bearing on the proper Sentencing Guideline calculation under § 2S1.1. <u>Without regard to what the jury found</u>, the sentencing judge is obligated to

34

find drug quantity as part of the sentencing process and calculate an offense level under U.S.S.G. § 2D1.1.  In following that course, the sentencing judge is directed to U.S.S.G. § 1B1.3 (relevant conduct), which incorporates into sentencing the <u>Pinkerton</u> principles adopted for conspiracy liability for substantive offenses.  <u>See</u> U.S.S.G. § 1B1.3 ("the base offense level . . . shall be determined on the basis of the following: . . . in the case of a jointly undertaken criminal activity . . . , all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity"); <u>cf.</u> <u>Pinkerton</u>, 328 U.S. at 647-48 ("A different case would arise if the substantive offense committed by one of the conspirators was not in fact done in furtherance of the conspiracy, did not fall within the scope of the unlawful project, or . . . could not be reasonably foreseen").

Ferguson advances no reason to believe that the district court misapplied the Sentencing Guidelines with regard to the money-laundering count.  The offense level for that count was based on a judge-found drug quantity, and the district court adopted the drug quantity recommended in the presentence report -- 9,000 kilograms of marijuana.  Nothing in the record suggests that either the presentence report or the district court failed properly to calculate the drug quantity in accordance with U.S.S.G. §§ 2D1.1 and 1B1.3.

The majority opinion says that "because the Guidelines imputed the base offense level determined for the marijuana conspiracy count to the money laundering count and the judge never made an independent calculation of offense level for the money laundering count, the 235-month sentence for the money laundering count necessarily rested on improper judicial fact-finding in violation of the Sixth Amendment." The majority seems to be saying that some fact was found by the judge that should have been found by the jury, and that by not allowing the jury to find it, the district court violated the Sixth Amendment. But the majority does not, and cannot, indicate what fact was improperly so found. The jury, by convicting Ferguson, found <u>all</u> of the facts required by 18 U.S.C. § 1956(h) (money laundering), and the district judge determined <u>for sentencing</u>, in agreement with the presentence report, that Ferguson was responsible for between 3,000 and 10,000 kilograms of marijuana. This drug quantity finding could not logically have <u>rested</u> on the jury's quantity finding, although it is consistent with it. The jury found simply that the conspiracy was responsible for <u>1,000 kilograms or more</u> of marijuana. The judge found that <u>Ferguson</u> was responsible for <u>between 3,000 and 10,000 kilograms</u> of marijuana to calculate an offense level. Because the district judge's drug quantity finding was greater than 1,000 kilograms, he necessarily made an independent finding of quantity and could not have relied on the jury verdict, as the majority suggests.

36

Moreover, Ferguson had no Sixth Amendment entitlement to a jury finding of drug quantity at the sentencing phase.  See United States v. Moreland, 437 F.3d 424, 432-34 (4th Cir. 2006).  The district judge properly determined the precise drug quantity under the Sentencing Guidelines; properly used that quantity to identify the offense level under § 2D1.1; and properly imputed that offense level to the Guidelines calculation under § 2S1.1.  None of these findings needed to be made by a jury.  Indeed, even under the majority opinion, the district judge may impose an identical sentence on remand, so long as he recites an "independent" finding of drug quantity.

Under the Sentencing Guidelines scheme, we review a district court's drug quantity findings for clear error.  See United States v. Carter, 300 F.3d 415, 425 (4th Cir. 2002).  Yet, nothing in the majority opinion or the record suggests that the district court did anything but accurately calculate the drug quantity using § 2D1.1 (the drug offense guideline) and § 1B1.3 (relevant conduct).

Indeed, the majority's reasoning with regard to the money laundering count is not at all legal in nature. Rather, it states simply, in a single sentence, that there was error in the drug conspiracy aspect of the trial and suggests that that error therefore "spread to" or "infected" the sentence imposed on a wholly different count.  The law does not comprehend this jurisprudence by metaphor to answer the simple question whether

37

Ferguson has a claim of right which he has been denied.  As Ferguson can provide no legal argument for why this should be so, his conviction and sentence on the money laundering count must stand.

Because I would affirm the judgment of the district court, I respectfully dissent.